# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE COUNTY OF MONTGOMERY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 18-5128** |
| **v.** | : | |
| | : | |
| **ATLANTIC RICHFIELD COMPANY,** *et al.* | : | |
| | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.  JUNE 5, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff County of Montgomery ("Plaintiff") commenced this action against Defendants[1] in the Court of Common Pleas of Montgomery County. The operative complaint (the second amended complaint) asserts a single claim under the Pennsylvania Declaratory Judgment Act which seeks a declaration that Defendants have caused an ongoing public nuisance in need of abatement by having played an active role in the proliferation of lead paint throughout the private housing stock located in Montgomery County. On November 28, 2018, Defendants removed this action to federal court pursuant to 28 U.S.C. §§1331, 1441(a), 1442, and 1446. [ECF 1]. In the notice of removal, Defendants contend this Court has subject-matter jurisdiction because (1) Plaintiff's amended complaint presents a substantial and necessary federal question and (2) lead-containing paint and lead pigments are present on relevant properties due to the direction and specifications of the federal government. Plaintiff filed the underlying motion to remand, [ECF

---

[1]  The Defendants in this case include Atlantic Richfield Company, E.I. Du Pont De Nemours and Company, NL Industries, Inc., PPG Industries, Inc., and The Sherwin-Williams Company (collectively, "Defendants"). Each Defendant is alleged to have been either a manufacturer of lead paint or a successor-in-interest to such a manufacturer.

16], which Defendants have opposed, [ECF 25].² For the reasons set forth, Plaintiff's motion to remand is granted.

**LEGAL STANDARD**

State-court actions that originally could have been filed in federal court may be removed to federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Removal of a case to federal court is governed by 28 U.S.C. §1441. Section 1441 is "to be strictly construed against removal and all doubts should be resolved in favor of remand." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *see also Boyer v. Snap-On Tools, Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). A removing defendant bears the burden of showing that removal was proper and that the federal court has subject-matter jurisdiction. *Samuel-Bassett* (citing 28 U.S.C. §1441). The existence of subject-matter jurisdiction must be decided on the face of the complaint. *See Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808 (1986) (providing that "the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint'") (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10 (1983)). A case removed to federal court must be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over the claim. 28 U.S.C. §1447(c).

**DISCUSSION**

*Federal-Question Jurisdiction*

As noted, Plaintiff asserts a single claim for declaratory judgment under the Pennsylvania Declaratory Judgment Act, seeking a declaration that Defendants have created an ongoing public

---

² This Court has also considered Plaintiff's reply. [ECF 26].

nuisance by having played an active role in the proliferation of lead paint in private houses located within Montgomery County. Notably, Plaintiff's amended complaint does not explicitly allege any cause of action arising under federal laws or the United States Constitution, invoke any federal cause of action, or explicitly challenge the constitutionality of a statute or the actions of a federal entity. Instead, Plaintiff's amended complaint asserts only a state-law declaratory judgment claim for nuisance. Notwithstanding, Defendants argue that removal of this action was proper because Plaintiff's claim implicates substantial federal issues in that liability turns on the construction and application of federal regulations and/or standards pertaining to lead paint. Defendants' argument is, however, misplaced.

The federal-question statute provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. "A case 'arises under' federal law within the meaning of §1331 . . . if a 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) (*quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)). Thus, a case can "aris[e] under" federal law in two ways; *to wit*: first, a case arises under federal law when federal law creates the cause of action asserted. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Here, Defendants do not argue that Plaintiff's asserted cause of action was created by federal law. Instead, Defendants argue that under the second category of removable cases, Plaintiff's state action "presents a necessary and substantial federal question as to whether federal standards defining and regulating lead paint hazards support [Plaintiff's] alleged definition of a public nuisance and the alleged scope of the abatement remedy."

Under this second category of cases, on which Defendants rely, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, the Supreme Court has "confined federal-question jurisdiction over state-law claims to those that really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng.'g & Mfg.*, 545 U.S. 308, 313 (2005) (internal quotation marks and brackets omitted).

The *Grable* Court suggested that the grant of federal-question jurisdiction in this posture would be "rare." *Id.* at 315. In *Empire*, the Supreme Court reaffirmed this point and explained that *Grable* represents a "special and small category" of cases in which it "takes more than a federal element to open the 'arising under' door." 547 U.S. at 699, 701 (quoting *Grable*) (internal quotation marks omitted); *see also Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd*, 136 S. Ct. 1562 (2016) (noting that "*Grable* presented one of the ***rare*** instances where a federal issue was necessarily raised.") (emphasis added). The United States Court of Appeals for the Third Circuit ("Third Circuit") has interpreted this slim category to include state-created claims that "involve pure issues of law and an application of those issues, which sensibly belong in a federal court." *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) (internal quotation marks omitted). In addition, the Third Circuit has since recognized that "[t]he prototypical case of *Grable* jurisdiction is one in which the federal government itself seeks access to a federal forum, an action of the federal government must be adjudicated, or where the validity of a federal statute is in question." *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 413 n.6 (3d Cir. 2015) (citing *Gunn*, 568 U.S. at 260; *Grable*, 545 U.S. at 312).

4

The *Grable* Court framed the removal-jurisdiction question as follows: "does a state law claim necessarily raise a stated federal issue [that is] actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Therefore, to establish "arising under" jurisdiction, Defendants must meet three elements. First, Plaintiff's state-law claim must "necessarily raise a stated federal issue," *id.*, meaning that an element of the state-law claim requires construction of federal law. *Manning*, 772 F.3d at 163. "For a federal issue to be necessarily raised, 'vindication of a right under state law [must] necessarily turn[ ] on some construction of federal law.'" *Id.* Second, the federal issue must be "actually disputed and substantial." *Grable,* 545 U.S. at 314. With respect to this element, the Supreme Court has distinguished cases such as *Grable* that present a "nearly pure issue of law" that would govern numerous other cases, from those that are "fact-bound and situation-specific." *Empire*, 547 U.S. at 700–01 (internal quotation marks omitted). Relatedly, for a case to involve a "substantial" federal issue, it must be one significant "to the federal system" as opposed to only the parties. *Gunn*, 568 U.S. at 259-60. Third, the case must be one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

The *Grable* Court further explained that the absence of a federal private cause of action was an important consideration in the removal analysis, weighing against federal-question jurisdiction:

> *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that §1331 requires. The absence of any federal cause of action affected *Merrell Dow's* result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But

5

> its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under §1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

*Id.*

Defendants argue that there is a substantial federal issue because Plaintiff's state-law declaratory judgment claim depends upon an interpretation and application of federal standards and/or regulations that pertain to lead paint. In support of their argument, Defendants point to the amended complaint's reference to a federal regulation on abatement and the Pennsylvania Lead Certification Act's purported incorporation of federal standards into its definition of "abatement." Mere references in a complaint to federal law and/or regulations or violations of such, however, do not give rise to jurisdiction under §1331. *See Merrell Dow*, 478 U.S. at 817 (holding that federal-question jurisdiction is not conferred simply by virtue of the fact that a plaintiff alleges a violation of a federal statute as an element of a state cause of action); *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010); *Siravo v. Crown Cork & Seal Co.*, 256 F. App'x 577, 580 (3d Cir. 2007) ("[T]he District Court correctly determined that the passing [federal law] references did not provide a basis for federal-question jurisdiction over Plaintiffs' otherwise 'garden variety state tort law' claims."); *Rodriguez v. Hovensa, L.L.C.*, 2014 WL 1308836, at *18-19 (D.V.I. Mar. 31, 2014) (remanding personal-injury action to local superior court, since jurisdiction did not arise under §1331 merely because plaintiff referred to defendant's violations of federal emissions standards in causing the injuries); *JVC Ams. Corp. v. CSXIntermodal Inc.*, 292 F. Supp. 2d 586,

592 (D.N.J. 2003) (holding removed action should be remanded when federal law is merely referenced or mentioned in a state law claim); *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 214-15 (D.N.J. 1992) (granting motion to remand state law claim, even though the complaint cited federal law). Nor is the mere presence of a federal standard embedded in a state-law cause of action sufficient to warrant federal subject-matter jurisdiction where there is no federal remedy for a violation of the federal statute. *Merrell Dow*, 487 U.S. at 810-14; *Pennsylvania v. Eli Lilly & Company, Inc.*, 511 F. Supp. 2d 576, 584-85 (E.D. Pa. 2007); *Hallstead-Great Bend Joint Sewer Auth. v. McElwee Grp., LLC*, 2016 WL 7188215, at *5 (M.D. Pa. Dec. 12, 2016). Furthermore, state law claims based on conduct that is also regulated by federal law does not necessarily give rise to federal-question jurisdiction. *Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 455 (D.N.J.2007) ("A state law cause of action does not give rise to a substantial and disputed question of federal law simply because it is predicated on conduct regulated by federal law.").

Defendants do not argue that there is a federal cause of action for the violation of the referenced federal regulations/standards. As noted by the Supreme Court, the absence of such a federal remedy is highly relevant to the analysis of whether federal-question jurisdiction exists. *See Grable*, 545 U.S. at 318; *Merrell Dow*, 478 U.S. at 810-14. Here, as in *Merrell Dow*, the absence of a federal cause of action for a violation of the referenced federal regulations is highly indicative of the lack of a substantial federal question. In addition, "[t]he fact that federal law may be informative . . . or 'shape or even limit the remedy that Plaintiff may obtain' does not mean that federal law is a necessary component of the cause of action." *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 413 (3d Cir. 2015) (citations omitted); *Weathers v. Sch. Dist. of Philadelphia*, 2019 WL 1259496, at *5 (E.D. Pa. Mar. 19, 2019) ("[T]he mere fact that resolution of a state-law claim requires a court to consider federal law is not sufficient to confer federal question jurisdiction over

a state law claim."). Thus, the fact that a court may look to federal law to determine whether there exists a public nuisance under state law does not make federal law a necessary component of Plaintiff's state-law cause of action.

Moreover, Defendants' contention that resolution of Plaintiff's state-law nuisance claim will require the interpretation and application of the cited federal regulations is also without merit. Under Pennsylvania law, a public nuisance is conduct involving an "unreasonable interference with a right common to the general public." *Callowhill Neighborhood Ass'n v. City of Phila. Zoning Bd. of Adjustment*, 118 A.3d 1214, 1229 (Pa. Commw. Ct. 2015). Pennsylvania courts routinely determine whether conduct meets this definition by considering a variety of factors, including whether it "involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience; whether the conduct is proscribed by a statute, ordinance or administrative regulation; or whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." *Id*. As such, this determination is highly "fact-bound and situation-specific," requiring consideration of many factors outlined by state courts. *See Empire*, 547 U.S. at 700-01. As in *Empire*, any federal issues raised in this case are unrelated to the actions of any federal agency, and the determination of whether Defendants created a nuisance is "fact-bound and situation-specific." *Empire*, 547 U.S. at 700.

Applying these principles, this Court concludes that this case does not arise under federal law. This case simply does not fit within the slim *Grable* category because it does not involve a pure issue of federal law, but rather, will be "fact-bound and situation-specific." Moreover, the gravamen of this case does not involve a direct challenge to, or require interpretation of, any allegedly applicable federal statutes, regulations, or actions. Removing Defendants have pointed

to no federal private right of action for the alleged violation of any federal statutes/regulations. Accordingly, removal is not proper under §1441.

This Court also finds instructive the decision in *Commonwealth of Pennsylvania v. Eli Lilly & Company, Inc.,* 511 F. Supp. 2d 576 (E.D. Pa. 2007), wherein the district court addressed removal jurisdiction under *Grable* and *Empire*. In *Eli Lilly*, the Commonwealth of Pennsylvania sued defendant pharmaceutical companies in state court, asserting various Pennsylvania statutory and common law claims based on the defendants' submission of allegedly fraudulent claims for prescription medications. *Id*. at 578. The removal to federal court was premised on the argument that the case raised a substantial federal issue. *Id*. The defendants argued that the resolution of the Commonwealth's claim that the defendants violated Pennsylvania law by submitting fraudulent claims under the Medicaid program depended upon the meaning of the phrase "medically accepted indication," a phrase defined by federal law. *Id*. at 581–82. The defendants also argued that resolution of the Commonwealth's deceptive marketing claims would require the construction and application of the Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§301, *et seq*., because the marketing of prescription drugs is extensively regulated by the FDA. *Id*. at 582. The district court disagreed and granted the Commonwealth's motion to remand. The court found that the complaint's use of the federal "medically accepted indication" standard did not justify removal because "liability under the state law claims . . . does not depend on the violation of any federal standard or statute." *Id*. at 581. The court further noted that "[t]here is no liability asserted in the Complaint for mere failure to comply with federal law" and that "the allegations presented . . . do not turn on the interpretation of federal law." *Id*. Instead, like *Empire* and unlike *Grable*, the court found that the central disputes in *Eli Lilly* were factual. *Id*. The court concluded that "[w]here such claims are fact-specific and wholly based on state law, federal jurisdiction will

9

neither further national uniformity, nor ensure the correct precedential interpretation of federal law." *Id.* at 587.

Though an unpublished decision, this Court also finds *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317 (3d Cir. 2010) persuasive. In *Kalick*, the plaintiff argued that the district court could exercise subject-matter jurisdiction because resolution of his state-law claim necessarily involved interpretation of a federal regulation. *Id.* at 320. Rejecting the plaintiff's argument, the Court held that a party "cannot simply cite to a federal regulation that does not give rise to a private cause of action in order to satisfy federal subject matter jurisdiction." *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320-21 (3d Cir. 2010) (citing *Empire*, 547 U.S. at 701).

As in *Eli Lilly* and *Kalick*, Plaintiff's amended complaint here alleges a single cause of action for nuisance under state law. There is no suggestion anywhere in the pleading that Plaintiff is suing to vindicate a federal right or to seek redress for a violation of federal law. Although the amended complaint makes passing reference to various federal regulations, the claim asserted is one under Pennsylvania state law. Any references to federal law merely inform Plaintiff's state-law claim. As such, this is not one of the "rare occasions . . . a suit raising a state-law claim rises or falls on the plaintiffs' ability to prove the violation of a federal duty." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016) (concerning remand of action asserting state law claims, even though the claims explicitly referred to defendant's alleged violations of federal securities regulations). As in *Empire,* any federal issues raised in this case are unrelated to the actions of any federal agency, and the determination of whether Defendants created a nuisance is "fact-bound and situation-specific." *Empire*, 547 U.S. at 700. Again, Plaintiff's nuisance claim simply does not fit within the slim category of cases set forth in *Grable* and *Empire.* As such, this Court lacks subject-matter jurisdiction under §1331.

## *Federal Officer Removal*

Defendants also argue that removal of this action was proper under 28 U.S.C. §1442(a)(1),[3] the federal officer removal statute. Defendants contend that they fall within the scope of §1442 because they "supplied the federal government with significant quantities of paint products during the time period in which the federal government specified the use of lead-based paint," for the federal government's "ships and military purposes" during the Word War I and II eras. (Notice of Removal ¶16). Defendants also allege that "[t]o the extent Sherwin-Williams' or other defendants' lead-containing paints or lead pigments are present in or on affected properties and buildings that were constructed by the federal government and have been transferred to private ownership, they are present pursuant to federal government direction and specifications . . . ." (*Id*. at ¶20). In the motion to remand, Plaintiff argues that Defendants have failed to establish that Defendants acted under the direction of a federal officer when they supplied "paint products" to the federal government or that the requisite causal nexus exists between the Defendants' conduct alleged in the amended complaint and their supply of paint products to the federal government for war purposes during the World War I and II eras. This Court agrees with Plaintiff that Defendants have not met their removal burden.

Section 1442(a)(1) allows a defendant to remove a case to federal court where the allegedly culpable behavior took place while the defendant was acting under the direction of a federal officer. *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 810 (3d Cir. 2016) (citing 28 U.S.C. §1442(a)(1)).

---

[3] Section 1442(a)(1) provides: "A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or ***any person acting under that officer***) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." (emphasis added).

To support removal under §1442(a)(1), a private defendant must demonstrate that: (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims. *Papp*, 842 F.3d at 812.

In *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007), the Supreme Court addressed "whether the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope of the italicized language ("*acting under*" and "*officer*" of the United States) and thereby permits removal." *Id*. at 145 (emphasis in original).[4] The Court held that it did not. In reaching its decision, the Court first explored the statute's history, finding that its basic purpose was to protect the Federal Government from interference with its "operations" that would ensue were a State able, for example, to "arres[t]" and bring "to trial in a State cour[t] for an alleged offense against the law of the State," "officers and agents" of the [federal] Government "acting . . . within the scope of their authority." 551 U.S. at 150; *see also Papp*, 842 F.3d at 811 ("Its central aim is protecting officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties."). Thus, the removal statute could apply to private persons, but only those "who lawfully assist a federal officer in the performance of his official duty" and "only if the private parties were authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." *Id.* (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883); *City of*

---

[4] The *Watson* Court acknowledged the requirement to broadly construe §1442(a)(1) but stated that such construction is not without boundaries: "[B]road language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson,* 551 U.S. at 147; *see also Barber v. Avco Corp.*, 2015 WL 7180507, at *4 (E.D. Pa. Nov. 16, 2015).

*Greenwood v. Peacock*, 384 U.S. 808, 824 (1966)). It is not enough for a defendant to show that the relevant acts occurred under the general auspices of a federal officer. *Good v. Armstrong World Industries, Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996).

When specifically addressing the "acting under" requirement, the *Watson* Court held that a "private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 153. The Court concluded that this was true "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id*. The Court opined:

> In our view, the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law. We recognize that sometimes an English speaker might say that one who complies with the law "helps" or "assists" governmental law enforcement. Taxpayers who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, for that matter well-behaved federal prisoners, all "help" or "assist" federal law enforcement authorities in some sense of those words. But that is not the sense of "help" or "assist" that can bring a private action within the scope of this statute. That is in part a matter of language. One would usually describe the behavior of the taxpayers, airline passengers, and prisoners we have described as *compliance* with the law (or *acquiescence* to an order), not as "acting under" a federal official who is giving an order or enforcing the law.

*Id*. at 152 (emphasis in original). As a result, the *Watson* Court found that it makes no difference how heavy the hand of the regulatory scheme is on the defendant's conduct because a "contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id.*

Significantly, in support of its decision, the *Watson* Court noted the absence of any alleged "contractual agreement" or other "special relationship" between the removing defendant and the

federal government. 551 U.S. at 153-56. The Court found that in the absence of any such "contractual" or "special relationship," the removing defendant had shown nothing more than "the usual regulator/regulated relationship," which was insufficient to bring a private party within §1442. *Id*. at 157. Thus, in the absence of a contractual relationship with the government, a removing party must provide evidence of a "special relationship" that is "distinct from the usual regulator/regulated relationship." *Id*.

Like defendant Philip Morris in *Watson*, Defendants here cannot meet the "acting under" requirement for § 1442(a)(1) removal, and their attempt to stretch the removal statute past the limits of its purpose and language fails. Plaintiff's claims against Defendants concern Defendants' active role in the manufacture and proliferation of lead-based paint in privately-owned homes in Montgomery County. The allegations cannot be stretched to relate to Defendants' alleged supply of "significant quantities of paint products" to the federal government in its war and military efforts during the World War I and II eras. Though Defendants attempt to stretch their supply of paint products during this same time-frame to the presence of lead-based paint in residential homes in Montgomery County, nowhere in their notice of removal do Defendants allege that they acted at the direction of the federal government in manufacturing, producing, and/or supplying lead-based paint for use in any federal housing projects in Montgomery County.

Unlike the many cases cited by Defendants, but like the defendant in *Watson*, Defendants have not alleged that they acted pursuant to government contracts which required them to produce or supply lead-based paint for the federal government to meet federal specifications. Nor do Defendants assert that there was any formal business relationship or contract between them and federal agents or officers such that Defendants could be deemed "authorized" to act on the federal officer's behalf in "affirmatively executing duties under federal law." *Watson*, 551 U.S. at 150.

14

Instead, Defendants merely allege that Sherwin-Williams "supplied the federal government with significant quantities of paint products during the time-period in which the federal government specified the use of lead-based paint." (Notice of Removal at ¶16). Under these circumstances, Defendants have not met their burden under *Watson* of demonstrating that they were acting under color of federal office.

In addition, Defendants have not alleged or proffered any evidence to show that they supplied the federal government with lead-based paint products to be used in housing in Montgomery County to meet any federal specifications. Indeed, Defendants allege only that they supplied the federal government "paint products," but do not allege that they supplied the federal government "lead-based paint products." At best, Sherwin-Williams alleges that the federal government "directed and recommended the use of lead-based paint on a variety of public and private buildings, including federal housing projects," and that Sherwin-Williams "supplied the federal government with significant quantities of paint products" during that time period. (Notice of Removal ¶¶15-16). Under these circumstances, this Court finds that Defendants have not met their burden of showing that they acted under a federal officer by "assist[ing] a federal officer in the performance of his official duty" and/or being "authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." *Watson*, 551 U.S. at 150.

Similarly, Defendants have not met their burden with respect to the causal requirement for federal officer removal. "[I]n order to meet the 'for or relating to' requirement, 'it is sufficient for there to be a connection or association between the act in question and the federal office." *Papp*, 842 F.3d at 813 (citations omitted). Here, there is no connection or association between the acts complained of in the amended complaint and the federal government. At the heart of Plaintiff's nuisance claim is Defendants' alleged active role in the proliferation of lead paint in the private

15

stock of homes in Montgomery County. As described above, in the notice of removal, Defendants allege only that they "supplied the federal government with significant quantities of paint products" for "ships and military purposes" during a time period (World War I and II) when the "federal government specified the use of lead-based paint." (Notice of Removal ¶16). This Court finds these allegations insufficient to meet the requisite connection and/or association between the supply of lead-based paint to homes in Montgomery County and Sherwin-Williams' alleged supply of "paint products" to the federal government for ships and military purposes.

To overcome this clear lack of the requisite association, Defendants ambiguously and baldly allege that the federal government directed the construction of federal housing projects in Montgomery County during the time period in which the federal government "directed and recommended" the use of lead-based paint. (Notice of Removal ¶¶15, 17). Conspicuously absent, however, is any allegation that Defendants supplied any such lead-based paint for these federal housing projects in Montgomery County at the direction of the federal government, pursuant to a federal contract, or to meet federal specifications. Without such allegations or evidence, Defendants have not shown the requisite association between the conduct alleged in the amended complaint and the federal direction. As such, this matter was improperly removed under the federal officer removal statute and must, therefore, be remanded to state court.[5]

**CONCLUSION**

For the foregoing reasons, Defendants have not carried their burden as the removing parties to show that the federal courts have subject matter jurisdiction over this case. Accordingly, this

---

[5] This Court also finds persuasive the district court decision in *Ohio, ex rel. Rogers v. Sherwin-Williams Company*, 2008 WL 4279579 (S.D. Ohio Sept. 17, 2008), in which the district court rejected the paint manufacturer defendants' arguments for removal of the plaintiffs' state law nuisance claims to federal court under the federal officer removal statute. Relying on the Supreme Court's decision in *Watson*, the district court found that the paint manufacturers had failed to meet the "acting under" and causal connection requisites for removal, as this Court does here.

matter is remanded to the state court from which it was removed.  An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.